William B Stewart, III
Rosalie A. Guancione
1461 Forrestal Ave
San Jose, CA 95110
408-436-8595
408-453-0530/fax (Call first)
In Proper Persona



FILED

2008 APR 24  P 3: 31

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

FEE PAID
NP

5



UNITED STATES DISTRICT COURT
Northern District of California
San Jose Division
280 So First Street #3035
San Jose, CA 95113-3099

| | |
|---|---|
| William B Stewart, III | ) Stewart vs. SF Police Credit Union |
| Rosalie A. Guancione | ) Case # |
| Stewart University of America |  **C 08  02143**  RS |
| John Does 1-50 | ) COMPLAINT FOR DAMAGES, |
|         Plaintiffs | ) (42 U.S.C. § 1983; Federal Tort Claims Act, |
| | ) 18 U.S.C. Impeding Commerce) |
|   vs. | ) COMPLAINT FOR RELIEF FROM |
| | ) CREDITOR CLAIM |
| San Francisco Police Credit Union | ) (U.C.C. ARTICLE 3-603, 604, and 15 U.S.C. |
| Michael R Sordelli, President / CEO | ) 1692g and 1692c(c), Fair Debt Collection |
|    -S.F. Police Credit Union | ) Practices) |
| Mr Michael R Sordelli | ) |
| City of San Mateo, County of San Mateo | ) |
| San Mateo County Dept. of Corrections | ) |
| San Mateo Judge Gerald Buchwald | ) |
| (Redwood City Judge, 1st hearing judge) | ) |
| San Mateo City Police Department | ) |
| Susan Manheimer, City of San Mateo | ) |
|         Police Chief | ) |
| Scott Miller, City of San Mateo Police | ) |
|         Detective | ) |
| Mr Scott Miller | ) |
| San Jose City Police Department | ) |
| San Jose City Police Chief | ) |
| City of San Jose, County of Santa Clara | ) |
| Santa Clara County Dept. of Corrections | ) |
| San Mateo City Council Members, | ) |
| Mr. Brant Grotte, Mr. Jon Lee, | ) |
| Ms. Jan Epstein, Mr. Jack Matthews, | ) |
| Ms. Carol Groom | ) |
| San Jose City Council Members, | ) |

Ms. Nora Campos, Mr. Kansen Chu,                 )
Mr. Sam Liccardo, Mr. Forrest Williams,          )
Mr. Pete Constant, Mr. Chuck Reed,               )
Ms. Judy Chirco, Mr. Pierluigi Oliverio,         )
Ms. Madison Nguyen, Ms. Nancy Pyle,              )
Mr. David D. Cortese, Ms D. Filippo,             )
Mr. Jonathon Seigel                              )
(Law firm of Seigel)                             )
John Does 1-99                                   )
                        Defendants               )
                                                 )
_____        )

## COMPLAINT FOR DAMAGES

(Assault and Battery, False Arrest, False Imprisonment, Negligence, Violation of First and
Fourth Amendment Rights)

## INTRODUCTORY STATEMENT

1. This is an action for damages sustained by citizens of the United States and
   corporations against police officers of the San Mateo City Police Department, and
   police officers of the San Jose Police Department, who unlawfully arrested, assaulted,
   prosecuted, and harassed the plaintiffs.

2. The action is against the Police Chief as the supervisory officer responsible for the
   conduct of the defendants and for the Police Chief's failure to take corrective action
   with respect to police personnel whose vicious propensities were notorious, to assure
   proper training and supervision of the personnel, or to implement meaningful
   procedures to discourage lawless official conduct, and against the County of San Mateo
   as the employer of the police personnel, which is sued as a person under 42 U.S.C. §
   1983.

## JURY DEMANDED
## JURISDICTION AND VENUE

3. This action is brought pursuant to 42 U.S.C.  §§ 1983, 1988 and the First, Fourth,
   Eight, and Fourteenth Amendments to the Constitution of the United States.

4. This action is also brought pursuant to 15 U.S.C.  §§ 1692g, and 1692c(c) and the First,
   Fourth, Eight, and Fourteenth Amendments to the Constitution of the United States.

5. This Court has subject matter jurisdiction of the action under 28 U.S.C. §§ 1331,
   1343(a)(3), (4), the First and Fourth Amendments of the United States Constitution,
   and the Federal Tort Claims Act.

6.  This Court may also exercise supplemental jurisdiction over the plaintiff's state law claims that arise from the same facts and circumstances under 28 U.S.C. § 1367.

PARTIES

7.  Plaintiff's are:

    a.  William B. Stewart, III, a resident of San Jose, and at all times relevant to the allegations of this complaint and is a citizen of the United States, and a resident of Santa Clara County.

    b.  Lance A. Stewart, a dependent of William B. Stewart, III, a resident of San Jose, and at all times relevant to the allegations of this complaint and is a citizen of the United States, and a resident of Santa Clara County.

    c.  Rosalie A. Guancione, a resident of San Jose, and at all times relevant to the allegations of this complaint and is a citizen of the United States, and a resident of Santa Clara County.

    d.  Stewart University of America, a non-profit institution, 501(c)(3), charitable educational Corporation, registered in the District of Columbia, and existed at all times relevant to the allegations of this complaint after May 24, 2007, and is a person under the law of the United States, whose Officers and Board of Directors include William B. Stewart and Rosalie A. Guancione.

    e.  Larkspur, a division of General Innovations West, Inc., a Nevada Corporation, and at all times relevant to the allegations of this complaint in existence, and is a person under the law of the United States.

    f.  Royal House of Stewart Corporation, Inc., a foreign Corporation to the United States of America, classed as "exempt" "C" Corporation, privately owned, not publicly traded, registered in the British Commonwealth, exempt from SEC filing requirements, and existed at all times relevant to the allegations of this complaint after March 2007, and is a person under the law of the United States, whose Officers and Board of Directors include William B. Stewart and Rosalie A. Guancione.

8.  Defendents are sued under the Federal Tort Claims Act for assault and battery, false arrest, false imprisonment, and negligence by law enforcement officers of the cities of San Jose and San Mateo, and corrections officers of the counties of Santa Clara and San Mateo, judges of the Sup. Ct. of California, San Mateo County and Santa Clara County.

9. At all times relevant to this action, defendant Detective Scott Miller was a police officer employed by the San Mateo City Police Department to perform duties in the City of San Mateo and was assigned to the detective unit.

    a. At all relevant times, this defendant was acting as the agent, servant, and employee of defendant County of San Mateo.

    b. This defendant is sued individually and in his official capacity.

10. At all times relevant to this action, defendant Michael Sordelli, President / CEO was a corporate officer employed by the San Francisco Police Credit Union to perform corporate duties.

    a. At all relevant times, this defendant was acting as the agent, servant, and employee of defendant San Francisco Police Credit Union.

    b. This defendant is sued individually and in his official capacity.

11. At all times relevant to this action, defendant Ms. D. Filippo (approximate) was employed by the San Francisco Police Credit Union.

    a. At all relevant times, this defendant was acting as the agent, servant, and employee of defendant San Francisco Police Credit Union.

    b. This defendant is sued individually and in her official capacity.

12. At all times relevant to this action, defendant Mr. Jonathon Seigel was employed by the San Francisco Police Credit Union.

    a. At all relevant times, this defendant was acting as the agent, servant, and employee of defendant San Francisco Police Credit Union.

    b. This defendant is sued individually and in his official capacity.

13. At all times relevant to this action, defendant (law firm of Mr. Jonathon Seigel) was employed by the San Francisco Police Credit Union.

    a. At all relevant times, this defendant was acting as the agent, servant, and employee of defendant San Francisco Police Credit Union.

    b. This defendant is sued individually and in it's official capacity.

14. At all times relevant to this action, defendant (John Doe name) was a Judge who issued the unjustified and illegal arrest warrant and set the unreasonable bail, employed by the

County of San Mateo to perform judicial duties in the City of South San Francisco and was assigned to the South San Francisco Division of the Sup. Ct. of Calif., County of San Mateo.

    a. At all relevant times, this defendant was acting as the agent, servant, and employee of defendant County of San Mateo.

    b. This defendant is sued individually and in his official capacity.

15. At all times relevant to this action, defendant (John Doe name) was a Judge who refused to lower the unreasonable bail (outside bail schedule) at the first arraignment hearing, employed by the County of San Mateo to perform judicial duties in Redwood City and was assigned to the Redwood City Division of the Sup. Ct. of Calif., County of San Mateo.

    a. At all relevant times, this defendant was acting as the agent, servant, and employee of defendant County of San Mateo.

    b. This defendant is sued individually and in his official capacity.

16. At all times relevant to this action, defendant Chuck Reed was the Mayor, employed by the City of San Jose to perform administrative, legislative and oversight duties in the City of San Jose and was assigned to the City Council.

    a. At all relevant times, this defendant was acting as the agent, servant, and employee of defendant City of San Jose.

    b. This defendant is sued individually and in his official capacity.

17. At all times relevant to this action, defendant David D. Cortese was the Vice Mayor, employed by the City of San Jose to perform administrative, legislative and oversight duties in the City of San Jose and was assigned to the City Council.

    a. At all relevant times, this defendant was acting as the agent, servant, and employee of defendant City of San Jose.

    b. This defendant is sued individually and in his official capacity.

18. At all times relevant to this action, defendants Pierluigi Oliverio, Pete Constant, Madison Nguyen, Sam Liccardo, Judy Chirco, Forrest Williams, Nancy Pyle, Nora Campos, and Kansen Chu, were City Councilmembers, employed by the City of San Jose to perform administrative, legislative and oversight duties in the City of San Jose and were assigned to the City Council.

    a.  At all relevant times, these defendants were acting as the agents, servants, and employees of defendant City of San Jose.

    b.  These defendants are sued individually and in each of their official capacities.

19. At all times relevant to this action, defendant San Jose Police Officers (John Does) were police officers employed by the City of San Jose Police Department, with issued badge numbers unknown. These defendants identities are currently unknown to and undiscoverable yet by plaintiff. The plaintiff will amend this complaint to state the true name of each "John Doe" as soon as possible. Each "John Doe" was assigned to the San Jose Police Department in Santa Clara County.

    a.  At all relevant times, these defendants were acting as the agents, servants, and employees of defendant City of San Jose.

    b.  These defendants are sued individually and in their official capacities.

20. The defendant City of San Jose is a municipal corporation within the State of California and, at all times relevant to this action, it employed other defendant's in this action.

21. The defendant County of Santa Clara is a municipal corporation within the State of California and, at all times relevant to this action, it employed other defendant's in this action.

22. At all relevant times and in all their actions, the police officer defendants from the City of San Jose were acting under color of law and pursuant to their authority as police personnel.

23. At all times relevant to this action, defendant Jack Matthews was the Mayor, employed by the City of San Mateo to perform administrative, legislative and oversight duties in the City of San Mateo and was assigned to the City Council.

    a.  At all relevant times, this defendant was acting as the agent, servant, and employee of defendant City of San Mateo.

    b.  This defendant is sued individually and in his official capacity.

24. At all times relevant to this action, defendant Carol Groom was the Deputy Mayor, employed by the City of San Mateo to perform administrative, legislative and oversight duties in the City of San Mateo and was assigned to the City Council.

    a.  At all relevant times, this defendant was acting as the agent, servant, and employee of defendant City of San Mateo.

b. This defendant is sued individually and in his official capacity.

25. At all times relevant to this action, defendant Brandt Grotte was a City Councilman, employed by the City of San Mateo to perform administrative, legislative and oversight duties in the City of San Mateo and was assigned to the City Council.

   a. At all relevant times, this defendant was acting as the agent, servant, and employee of defendant City of San Mateo.

   b. This defendant is sued individually and in his official capacity.

26. At all times relevant to this action, defendant Jon Lee was a City Councilman, employed by the City of San Mateo to perform administrative, legislative and oversight duties in the City of San Mateo and was assigned to the City Council.

   a. At all relevant times, this defendant was acting as the agent, servant, and employee of defendant City of San Mateo.

   b. This defendant is sued individually and in his official capacity.

27. At all times relevant to this action, defendant Jan Epstein was a City Councilman, employed by the City of San Mateo to perform administrative, legislative and oversight duties in the City of San Mateo and was assigned to the City Council.

   a. At all relevant times, this defendant was acting as the agent, servant, and employee of defendant City of San Mateo.

   b. This defendant is sued individually and in his official capacity.

28. At all times relevant to this action, defendant San Mateo Police Officers (John Does) were police officers employed by the City of San Mateo Police Department, with issued badge numbers unknown. These defendant's identities are currently unknown to and undiscoverable yet by plaintiff. The plaintiff will amend this complaint to state the true name of each "John Doe" as soon as possible. Each "John Doe" was assigned to the San Mateo Police Department in San Mateo County.

   a. At all relevant times, these defendants were acting as the agents, servants, and employees of defendant City of San Mateo.

   b. These defendants are sued individually and in their official capacities.

29. The defendant City of San Mateo is a municipal corporation within the State of California and, at all times relevant to this action, it employed other defendant's in this action.

30. The defendant County of San Mateo is a municipal corporation within the State of California and, at all times relevant to this action, it employed other defendant's in this action.

31. At all relevant times and in all their actions, the police officer defendants from the City of San Mateo were acting under color of law and pursuant to their authority as police personnel.

## FACTUAL ALLEGATIONS

32. In the month of January 2007, defendant San Francisco Police Credit Union claims to have given a loan of its funds to plaintiff William B. Stewart, III. Plaintiff, or his agents, made one or two payments to San Francisco Credit Union, during the following months.

33. Plaintiff's financial position changed, as the economy of the United States of America spiraled into a recession. Plaintiff and his agents no longer made payments on the unsecured, signature loan. Plaintiff and his agents no longer took calls from the creditor, in hopes of an improvement in plaintiff's financial situation which did not happen due to delays in the issue of a government issued license to operate a particular business.

34. Plaintiff was called by a detective of the San Mateo Police Dept. named Scott Miller. Miller asked plaintiff Stewart if his employer, Larkspur, existed. Stewart told Miller that Larkspur did exist. Miller asked Stewart if there was fraud involved in the loan application to San Francisco Police Credit Union committed by Stewart. Stewart told Miller in the same telephone conversation that there was no fraud committed by him. Stewart reminded Miller that the loan was an unsecured signature loan, and merely involved consumer credit.

35. Plaintiff became aware that San Mateo Police Dept. Scott Miller was coming to San Jose, Santa Clara County, from San Mateo, San Mateo County, to the residence of plaintiff Stewart. Defendant Miller began a stalking campaign of plaintiff Stewart for the period of approximately one full calendar year.

36. During the course of defendant Miller's stalking of plaintiff Stewart, Miller contacted told other individuals living in Stewart's household that Stewart better pay his debt or things would only get worse.

37. Defendant Miller sought to intimidate Stewart's household members by leaving his business card with them, and telling them to have plaintiff Stewart call defendant Miller or things would only get worse.

38. Defendant Miller showed members of plaintiff Stewarts household papers resembling telephone bills. Defendant Miller then asked household members to confirm telephone numbers of Plaintiffs for illegal wiretap purposes and invasion of privacy. Defendant Miller approached neighbors about Stewart and slandered plaintiffs good name and reputation.

39. Plaintiff Stewart wrote a letter and sent it to each member of the San Mateo city council, and the San Mateo City Police Chief, warning the defendants in their official and private capacities. The letter described the stalking, invasion of privacy, lack of any crime, illegal and unfair credit collection practices of the defendant Det. Miller. Stewart wrote that defendant Miller needed to be fired or sent for retraining. Plaintiff Stewart wrote that defendant Miller did not understand that the United States of America has never had debtors prisons, and that the matter involved an unsecured signature loan debt that did not involve any fraud on the part of plaintiff Stewart, and that the consumer debt would be paid when Stewart's financial position changed. The defendant City of San Mateo and the defendant San Mateo Police Chief allowed or encouraged defendant Det. Miller to continue stalking and harassment of plaintiff Stewart.

40. Later court filings in both Santa Clara County and San Mateo County libeled plaintiff Stewart's good name, which is also used in business enterprises, both for profit and non-profit. The Stewart name is a very honest, proud and reputable name, and suffers when slandered or libeled by defendants Det. Miller, defendants who are employees of the San Francisco Police Credit Union, including Ms. D. Filippo.

41. Defendants Jonathon Seigel, Det. Miller and Ms. D. Filippo maliciously and negligently libeled plaintiff Stewart and his employer, plaintiff Larspur, in various court filings in Santa Clara County in California Sup. Ct., Civil Division, on or before July 2007.

42. Plaintiff Stewart made a bonafide offer telephonically to pay the debt claimed by the defendant San Francisco Police Credit Union on or about February 12, 2008, to Jonathon Seigel, to be paid 150 days thereafter. Jonathon Seigel, acting as a representative, agent and employee, of defendant creditor, stated to plaintiff Stewart that creditor agreed to this offer. The offer tendered by plaintiff Stewart did not include payment of court costs or attorney fees. Defendant Seigel wrote a tentative stipulation that added those terms without consent of plaintiff Stewart, and when Stewart did not agree to that, defendant Seigel falsely claimed that Stewart reniged on the bonafide offer.

43. Defendants had in January 2008, prior to entering into new contract with plaintiff Stewart in February, and unknown to plaintiff Stewart prior to false arrest in March 10, 2008, had already borne false witness and entered false testimony and false reports to

cause plaintiff Stewart to be falsely arrested and falsely imprisoned in March 10, 2008, and assault and battery of Rosalie A. Guancione on March 10, 2008.

44. Defendants Det. Miller and Ms. D. Filippo maliciously and negligently libeled plaintiff Stewart and his employer, plaintiff Larspur, in various court filings in San Mateo County, which resulted in incidents of false arrest and imprisonment of defendant Stewart for 13 days, and assault and battery against defendant Guancione only one week after a knee surgery and resulting in significant further knee damage, and associated libel and business losses to Stewart University of America and other business interests involved with plaintiff Stewart.

45. Failure by defendant San Francisco Police Credit Union to accept a bonafide offer of payment of the debt and instead having plaintiff falsely arrested, constitutes a forgiveness or abolition of the debt. Plaintiff Stewart requests relief from the debt under Title 3 Uniform Commercial Code 3-603 and 604, Tender of Payment.

46. Subsequent to the Santa Clara Sup. Ct. civil debt collection case filing by defendants San Francisco Police Credit Union and Michael R. Sordelli, President and CEO, San Francisco Police Credit Union, for breach of contract and fraud, plaintiff Stewart wrote three letters to defendant Sordelli in both his public and private capacity, to in accordance with 15 U.S.C. 1692g, and 1692c(c), provide verification and validation of the claimed debt or drop the claim against plaintiff Stewart as required by federal law. Plaintiff Stewart pointed out to defendant Sordelli in the letters that silence is acquiescence. No direct response from defendant Sordelli was received by plaintiff Stewart. Defendant Stewart has reason to believe that the claimed debt was inaccurate.

47. Defendant Sordelli did not respond to plaintiff Stewarts requests for a verification and validation of the debt. Defendant Sordelli had defendant Seigel write to plaintiff Stewart to stop sending requests to verify and validate the debt.

48. Requests for verification and validation of a civil debt are a right provided to debtors under 15 U.S.C., Fair Debt Collection Practices Act.

49. As a continuing member of the San Francisco Police Credit Union through the date of this court filing, plaintiff Stewart has other continuing rights to correspond directly with his credit union president and CEO, separate and distinct from his rights as a claimed debtor, or his rights as an attorney in proper persona involved in civil litigation.

50. Failure by defendant Sordelli to provide a proper verification and validation of the debt as described in Black's Law Dictionary, 6th Edition, constitutes a forgiveness or abolition of the debt. Plaintiff Stewart requests relief from the debt under 15 U.S.C..

51. On March 10th, 2008, at 7:00 AM, plaintiff Stewart and Guancione were awakened to loud knocking, banging and yelling, all around the single family dwelling located at 1461 Forrestal Avenue, San Jose, CA.

52. Plaintiff Guancione answered the door by speaking through a side window.

53. I, Rosalie Aubree` Guancione, a disabled 55 year old woman, barely able to walk due to knee surgery within the last week and still half asleep and droggy from taking pain medication for the surgery went to answer the front door. I saw 6 men outside, and another man coming from the backyard of the residence. Two men were holding the porch screen door open as if they were ready to pounce in my home upon opening of the front door, and all of them were huddling under the porch, an area of about 5' x 8'. I could not see exactly who they were. But they saw me when I looked out the window and demanded that I open the door immediately.

I opened the porch window and told them I didn't call the police, and I did not need the police. They said that they were there to arrest Bill Stewart, and they knew he was here and I had better open the door, or they would break it down.

I asked if they had a warrant or similar to show me. They then all groaned, rolled their eyes and shook their heads. I also asked why they were there to arrest Bill. They answered that he had felony charges against him and they just wanted to talk to him. Again I asked them if they had a warrant. They pressed against the screen of the window a plain white 8 ½" x 11" piece of regular white paper, with some printed information on it in font type size of approximately 10-11point, which took up only one fifth of the page approximately 3" x 6" at the left hand top area. This plain white paper had no judge's signature on it, it did not say warrant clearly on it so it could be read easily, and so I did not believe them. In fact, I could not read the paper thru the screen at all.

Then surprisingly, detective Miller of the San Mateo Police Department himself popped his head directly in front of me at the window behind the screen and said, *"Remember when I was here last time, I told you that I would be back and make things a lot worse! Remember? Well here I am"* I think he felt he was speaking with another person in the household--Because, I never spoke to detective Miller in person at any location.

So I told them I would open the door and wanted to see the warrant, and they agreed to show me it. When I opened the door, one of the men put his foot in the door and then began pushing on it without showing me warrant or any paper or information as he had agreed to do. So I pushed back. Then more men outside the door pushed harder and pushed the door open and they came running in. Two San Jose policemen brutally and roughly grabbed me, and man handled me by twisting my hands viciously and with brute force behind my back and forcefully pushing me down to the floor. I told

them that they were hurting me on my hands where I just had IV needles in my arms and hands from the week prior from knee surgery, and I needed to sit down because I just had knee surgery, and I could not stand up and or twist around as they were physically pushing and forcing me down to my knees. They didn't care. They just kept demandingly saying, *"Come 'ere you – Get down!"* They pushed me very brutally and roughly to my knees on my hardwood floor in my dining room, approximately 4 feet away from the front door where they had originally entered. There was a chair less than 2 feet away but they would not let me sit on it or help me from my knees to get to the chair. They just kept pushing me to the floor and pulling and twisting my hands and arms behind my back. They hand cuffed me extremely roughly and kept twisting my wrists and still would not let me sit down. Finally I got off the floor, on my own as best as I could with my swollen knee, and made my way to the chair approximately 3 feet away now, took off the hand cuffs and handed them back to them.

At this time, I took off the hand cuffs and handed them back to the policemen and they were very angry with me. And, asked me how I got the cuffs off. I told them that they did not need to cuff me in the first place. I just needed to sit down when they kept brutally and roughly pushing me around . I also told them again about the surgery on my knee only one week ago and I needed to sit in the chair not be on my knees on the floor where they had pushed me down. One policeman said, *"Boy she's a piece of work!"* to Bill Stewart, but I over heard him say it.

Bill Stewart saw how the police had man handled me because he was brought out of the back room of the residence, still in his underwear and hand cuffed him less than 20 feet away from where I was.

The San Mateo police told Bill Stewart they had a warrant for his arrest and were arresting him for Grand Theft. He was not read his rights at all then upon the arrest. They then let him get dressed and they took him out of the residence and brought him to the San Jose jail.

## FEDERAL THEORIES OF RECOVERY

54. The actions and omissions described above, engaged in under color of state authority by the defendants (including defendant Counties and Cities), sued as persons responsible because of their authorization, condonation, and ratification of the acts of their agents, deprived the plaintiffs of their rights secured to them by the Constitution of the United States, including, but not limited to, the plaintiff's:

   a.  First Amendment right to freedom of expression;

b. Fourth Amendment right to be free from unlawful seizure of each of their persons;

c. Fifth and Fourteenth Amendment rights to due process of law, including the right to be free from unjustified and excessive force utilized by police; and

d. Eighth Amendment right to be free from cruel and unusual punishment.

## STATE LAW THEORIES OF RECOVERY

55. On April 23, 2008, the plaintiff caused a written verified Notice of Claim to be filed with and served on the proper officers, agents, and employees of the defendant Cities of San Jose and San Mateo, pursuant to the claims statutes governing these cases. A true and correct copy of the Notices are attached to this complaint and incorporated by reference in it as Exhibits "A", "B", "C", and "D."

56. Plaintiff's claim has been denied by operation of law because less than 30 days have elapsed since the service of the Notice of Claim, and adjustment or payment of the Claim has been neglected or refused in each instance.

57. The acts and conduct alleged above constitute actionable torts under the laws of the State of California, including the tort of:

a. False arrest and imprisonment,

b. Assault and battery,

c. Malicious prosecution,

d. Abuse of process,

e. Negligence, and

f. Gross negligence,

## PRAYER

Plaintiffs demand the following relief:

A. Compensatory damages in the amount of $500,000,000.00

B. Punitive damages in the amount of $500,000,000.00

C. Attorney's fees pursuant to 42 U.S.C. § 1988.

D. An award of plaintiff's lost revenue due to inability to execute on critical government filing while falsely imprisoned.

E. Doctors and healthcare costs related to battery and emotional distress of plaintiffs

F. All other relief that is appropriate under the circumstances.

Dated: _April 24 - 2008_

William B. Stewart, III _W.B. Stewart III_

Rosalie A. Guancione _Rosalie A. Guancione_

Rosalie A. Guancione _Rosalie A. Guancione_
R.A. Guancione for Stewart University of America
_R.A. Guancione_

R.A. Guancione for Larkspur
_R.A. Guancione_

R.A. Guancione for Royal House of Stewart Corporation, Inc. _R.A. Guancione_

# Exhibit A



**CITY OF SAN JOSE**
**CAPITAL OF SILICON VALLEY**

# CLAIM AGAINST THE
# CITY OF SAN JOSE, CA

(For Damages to Persons or Personal Property)

Office of the City Clerk Timestamp

#_____

**Office of the City Clerk**
**200 East Santa Clara Street**
**San José, CA 95113**

Received by: _____
Via:    U.S. Mail        _____
         Interoffice Mail  _____
         Over the Counter  _____

·(Please do not write above this line – for City use only)

Generally, a claim against the City of San José for damages to persons or personal property must be filed with the City Clerk of the City of San José within six months after the incident occurred. See Government Code 911.2. Completed claims **must be mailed or delivered to: Office of the City Clerk, City of San José, 200 E. Santa Clara Street, San José, CA 95113.** The Office is located on the·second floor of the City Hall Wing, (408) 535-1260. PLEASE PROVIDE THE ORIGINAL AND ONE COPY OF THIS CLAIM FORM. Attach copies of any receipts or other documentation to the original claim form and to the copy.

TO THE CITY CLERK of the City of San José, California:
The undersigned respectfully submits the following claim and information relative to damage to persons and/or personal property:

| NAME OF CLAIMANT | SEE attached Detailed papers | DATE OF BIRTH: | SEE ATTAched |
|---|---|---|---|

| ADDRESS OF CLAIMANT | SEE attached | CITY San Jose | STATE CA | ZIP CODE 95110 |
|---|---|---|---|---|

| HOME PHONE ( ) | WORK PHONE (408) 436-8595 | DRIVER'S LICENSE DL STATE AND NUMBER CA A0888657 |
|---|---|---|

SEND NOTICES REGARDING THIS CLAIM TO: (List name, mailing address and phone number if not same as above.)

| DATE OF INCIDENT OR OCCURRENCE CAUSING CLAIM 03/10/08 | PLACE (Exact and specific location of incident.) 1461 Forrestal Ave San Jose CA |
|---|---|

CIRCUMSTANCES (Specify the occurrence, event, act, or omission which you claim caused the injury or damage for which you are submitting this claim. Where space is insufficient, attach an additional page with the claimant's name on the page.)

SEE attached

CITY'S ACTION (Specify action by City or its employees which caused alleged damage or injury.)

SEE ATTAched report

CITY EMPLOYEES' NAMES OR CITY DEPARTMENT INVOLVED IN ALLEGED ACCIDENT OR INCIDENT.

SEE ATTAched report

# CLAIM AGAINST THE
# CITY OF SAN JOSE, CA

Page 2

**DESCRIPTION OF LOSS** (Describe injury, property damage or loss, so far as is known at this time. If there were no injuries, state "NO INJURIES.")

*SEE ATTAched report*

**OTHER INJURED PERSONS** (list names and addresses)

*SEE ATTAched report*

**OWNER OF PROPERTY DAMAGED** (if different from claimant)

*NONE*

**AMOUNT CLAIMED:**

| | |
|---|---|
| Amount claimed as of this date: | $ *SEE ATTAched* |
| Estimated amount of future costs: | $ |
| Total amount claimed: | $ |

Basis for computation of amounts claimed (include copies of bills, invoices, estimates, etc.):

**WITNESSES, HOSPITALS, DOCTORS, ETC.** (list names and addresses):

*SEE ATTAched*

**ADDITIONAL INFORMATION** (List any additional information that might be helpful in considering your claim.):

*NONE*

---

**WARNING! IT IS A CRIMINAL OFFENSE TO FILE A FALSE CLAIM** (Penal Code Section 72)

I have read the matters and statements made in the above claim and I know the same to be true of my own knowledge, except to those matters stated upon information or belief and as to such matters I believe the same to be true. I certify under penalty of perjury that the foregoing is TRUE and CORRECT.

Signed this _24_ day of _April_ , 20 _08_          *R. Guancione*

                                                                                    **Claimant's Signature**

# ___ Claim Against the City of San Jose, CA _____

(Attached to original claim document)

**1) Name of Claimant:**
   a. William B Stewart, III
   b. Rosalie A Guancione
   c. Stewart University of America
   d. Larkspur
   e. Royal House of Stewart

**Date of Birth:**
   a. William B Stewart, III - 11/11/1955
   b. Rosalie A Guancione – 01/16/1953

**Address of Claimant:**
   a. Stewart and Guancione: 1461 Forrestal Ave
                              San Jose, CA 95110
   b. Stewart University of America:
      ➢ 2094 El Camino Real #218
         Santa Clara, CA 95050
   c. Larkspur and Royal House of Stewart
      ➢ 15732 Los Gatos Blvd #410
         Los Gatos, CA 95032

**Phone #:** 408-436-8595
**Correspondence Address:** 2094 El Camino Real #218
                            Santa Clara, CA 95050

**2) Date of Incident:** March 10, approximately one year antecedent to
   that, and one month postcedent to that date
   Place of Incident: in and around: 1461 Forrestal Ave.,
                              San Jose, CA 95110

1

**3) Circumstances:** I, Rosalie Aubree` Guancione, a disabled 55 year old woman, barely able to walk due to knee surgery within the last week of the incident of 03/10/08, and still half asleep and droggy from taking pain medication for the surgery went to answer the front door. I saw 6 men outside, and another man coming from the backyard of the residence. Two men were holding the porch screen door open as if they were ready to pounce in my home upon opening of the front door, and all of them were huddling under the porch, an area of about 5' x 8'. I could not see exactly who they were. But they saw me when I looked out the window and demanded that I open the door immediately.

I opened the porch window and told them I didn't call the police, and I did not need the police. They said that they were there to arrest Bill Stewart, and they knew he was here and I had better open the door, or they would break it down.

I asked if they had a warrant or similar to show me. They then all groaned, rolled their eyes and shook their heads. I also asked why they were there to arrest Bill. They answered that he had felony charges against him and they just wanted to talk to him. Again I asked them if they had a warrant. They pressed against the screen of the window a plain white 8 ½" x 11" piece of regular white paper, with some printed information on it in font type size of approximately 10-11point, which took up only one fifth of the page approximately 3" x 6" at the left hand top area. This plain white paper had no judge's signature on it, it did not say warrant clearly on it so it could be read easily, and so I did not believe them. In fact, I could not read the paper thru the screen at all.

Then surprisingly, detective Miller of the San Mateo Police Department himself popped his head directly in front of me at the window behind the screen and said, *"Remember when I was here last time, I told you that I would be back and make things a lot worse! Remember? Well here I am"* I think he felt he was speaking with another person in the household--Because, I never spoke to detective Miller in person at any location.

So I told them I would open the door and wanted to see the warrant, and they agreed to show me it.  When I opened the door, one of the men put his foot in the door and then began pushing on it without

2

showing me warrant or any paper or information as he had agreed to do. So I pushed back. Then more men outside the door pushed harder and pushed the door open and they came running in. Two San Jose policemen brutally and roughly grabbed me, and man handled me by twisting my hands viciously and with brute force behind my back and forcefully pushing me down to the floor. I told them that they were hurting me on my hands where I just had IV needles in my arms and hands from the week prior from knee surgery, and I needed to sit down because I just had knee surgery, and I could not stand up and or twist around as they were unnecessarily physically pushing and forcing me down to my knees. They didn't care. They just kept demandingly saying, *"Come 'ere you – Get down!"* They pushed me very brutally and roughly to my knees on my hardwood floor in my dining room, approximately 4 feet away from the front door where they had originally entered. There was a chair less than 2 feet away but they would not let me sit on it or help me from my knees to get to the chair. They just kept pushing me to the floor and pulling and twisting my hands and arms behind my back. They hand cuffed me extremely roughly and kept twisting my wrists and still would not let me sit down. Finally I got off the floor, on my own as best as I could with my swollen knee, and made my way to the chair approximately 3 feet away now, took off the hand cuffs and handed them back to them.

At this time, I took off the hand cuffs and handed them back to the policemen and they were very angry with me. And, asked me how I got the cuffs off. I told them that they did not need to cuff me in the first place. I just needed to sit down when they kept brutally and roughly pushing me around. I also told them again

about the surgery on my knee only one week ago and I needed to sit in the chair not be on my knees on the floor where they had pushed me down. One policeman said, *"Boy she's a piece of work!"* to Bill Stewart, but I over heard him say it.

Bill Stewart saw how the police had man handled me because he was brought out of the back room of the residence, still in his underwear and hand cuffed him less than 20 feet away from where I was.

The San Mateo police told Bill Stewart they had a warrant for his arrest and were arresting him for Grand Theft. He was not read his rights at all then upon the arrest. They then let him get dressed and they took him out of the residence and brought him to the San Jose jail.

3

**4) City's Action which caused the incident:** Negligence, False Arrest, False Imprisonment, False testimony, violation of civil rights, illegal search and seizure, denial of reasonable bail, torment, inedible and inadequate diet, harassment, stalking for one year, scalding shower water temperature in jail, name calling and accusations of guilt by guards during incarceration without any conviction in jail, invasion of privacy, slander and libel from both city and county

**5) City's Employees –** City of San Jose, San Jose City Police Department, San Jose City Police Chief, San Jose City Council Members, Ms. Nora Campos, Mr. Kansen Chu, Mr. Sam Liccardo, Mr. Forrest Williams, Mr. Pete Constant, Ms. Judy Chirco, Mr. Pierluigi Oliverio, Ms. Madison Nguyen, Ms. Nancy Pyle, Mr. David D. Cortese, Mr. Chuck Reed

**Names or City Dept involved in alleged incident:** San Jose police dept., city council, police chief, county Dept. of Corrections, Superior Ct. judges

**6) Description of Loss:** (see answer 3), loss of sense of well being, safety, security in my own home, reputation from slander and libel, delay of award of business licenses causing lost income of $10 million per month

**7) Other Injured Persons:**  (see answer 1)

**8) Amount Claimed Loss:** $1Billion with damages
  - Amount to date: see above
  - Estimated amount of future costs: TBD
  - Total Amount Claimed: at least $1Billion USD

**Basis for computation of claims:**
  (1) Loss of business income due to delay of critical business government filing when plaintiff was in jail: due to false allegations which lead to an unfounded and illegal arrest
  (2) Personal assault injury/battery and emotional distress: due to excessive force and invasion of peaceful home environment

(3) Libel, slander, abuse of process, gross negligence,
malicious prosecution, and jail time

**9) Witnesses, Hospitals, Doctors, etc...** Police, physicians for knee
injury and treatment, household members, corporate employees.

**10) Additional Information. None.**

William B. Stewart, III _(signature)_

Rosalie A. Guancione _(signature)_

Rosalie A. Guancione _(signature)_
R.A. Guancione for Stewart University of America
_(signature)_

R.A. Guancione for Larkspur
_(signature)_

R.A. Guancione for Royal House of Stewart
Corporation, Inc.
_(signature)_

5

# Exhibit B

# ____ Claim Against the County of Santa Clara, CA ____

(Attached to original claim document)

**1) Name of Claimant:**
    a. William B Stewart, III
    b. Rosalie A Guancione
    c. Stewart University of America
    d. Larkspur
    e. Royal House of Stewart

**Date of Birth:**
    a. William B Stewart, III  - 11/11/1955
    b. Rosalie A Guancione – 01/16/1953

**Address of Claimant:**
    a. Stewart and Guancione: 1461 Forrestal Ave
                     San Jose, CA 95110
    b. Stewart University of America:
       ➤ 2094 El Camino Real #218
       Santa Clara, CA 95050
    c. Larkspur and Royal House of Stewart
       ➤ 15732 Los Gatos Blvd #410
       Los Gatos, CA 95032

**Phone #:** 408-436-8595
**Correspondence Address:** 2094 El Camino Real #218
                             Santa Clara, CA 95050

**2) Date of Incident:** March 10, approximately one year antecedent to that, and one month postcedent to that date
    Place of Incident: in and around: 1461 Forrestal Ave.,
                         San Jose, CA 95110

**3) Circumstances:** I, Rosalie Aubree` Guancione, a disabled 55 year old woman, barely able to walk due to knee surgery within the last week of the incident of 03/10/08, and still half asleep and droggy from taking pain medication for the surgery went to answer the front door. I saw 6 men outside, and another man coming from the backyard of the residence. Two men were holding the porch screen door open as if they were ready to pounce in my home upon opening of the front door, and all of them were huddling under the porch, an area of about 5' x 8'. I could not see exactly who they were. But they saw me when I looked out the window and demanded that I open the door immediately.

I opened the porch window and told them I didn't call the police, and I did not need the police. They said that they were there to arrest Bill Stewart, and they knew he was here and I had better open the door, or they would break it down.

I asked if they had a warrant or similar to show me. They then all groaned, rolled their eyes and shook their heads. I also asked why they were there to arrest Bill. They answered that he had felony charges against him and they just wanted to talk to him. Again I asked them if they had a warrant. They pressed against the screen of the window a plain white 8 ½" x 11" piece of regular white paper, with some printed information on it in font type size of approximately 10-11point, which took up only one fifth of the page approximately 3" x 6" at the left hand top area. This plain white paper had no judge's signature on it, it did not say warrant clearly on it so it could be read easily, and so I did not believe them. In fact, I could not read the paper thru the screen at all.

Then surprisingly, detective Miller of the San Mateo Police Department himself popped his head directly in front of me at the window behind the screen and said, *"Remember when I was here last time, I told you that I would be back and make things a lot worse! Remember? Well here I am"* I think he felt he was speaking with another person in the household--Because, I never spoke to detective Miller in person at any location.

So I told them I would open the door and wanted to see the warrant, and they agreed to show me it.  When I opened the door, one of the men put his foot in the door and then began pushing on it without

2

showing me warrant or any paper or information as he had agreed to do. So I pushed back. Then more men outside the door pushed harder and pushed the door open and they came running in. Two San Jose policemen brutally and roughly grabbed me, and man handled me by twisting my hands viciously and with brute force behind my back and forcefully pushing me down to the floor. I told them that they were hurting me on my hands where I just had IV needles in my arms and hands from the week prior from knee surgery, and I needed to sit down because I just had knee surgery, and I could not stand up and or twist around as they were unnecessarily physically pushing and forcing me down to my knees. They didn't care. They just kept demandingly saying, *"Come 'ere you – Get down!"* They pushed me very brutally and roughly to my knees on my hardwood floor in my dining room, approximately 4 feet away from the front door where they had originally entered. There was a chair less than 2 feet away but they would not let me sit on it or help me from my knees to get to the chair. They just kept pushing me to the floor and pulling and twisting my hands and arms behind my back. They hand cuffed me extremely roughly and kept twisting my wrists and still would not let me sit down. Finally I got off the floor, on my own as best as I could with my swollen knee, and made my way to the chair approximately 3 feet away now, took off the hand cuffs and handed them back to them.

At this time, I took off the hand cuffs and handed them back to the policemen and they were very angry with me. And, asked me how I got the cuffs off. I told them that they did not need to cuff me in the first place. I just needed to sit down when they kept brutally and roughly pushing me around. I also told them again

about the surgery on my knee only one week ago and I needed to sit in the chair not be on my knees on the floor where they had pushed me down. One policeman said, *"Boy she's a piece of work!"* to Bill Stewart, but I over heard him say it.

Bill Stewart saw how the police had man handled me because he was brought out of the back room of the residence, still in his underwear and hand cuffed him less than 20 feet away from where I was.

The San Mateo police told Bill Stewart they had a warrant for his arrest and were arresting him for Grand Theft. He was not read his rights at all then upon the arrest. They then let him get dressed and they took him out of the residence and brought him to the San Jose jail and then to San Mateo jail in Redwood City, for 12/days.

3

**4) City's Action which caused the incident:** Negligence, False Arrest, False Imprisonment, False testimony, violation of civil rights, illegal search and seizure, denial of reasonable bail, torment, inedible and inadequate diet, harassment, stalking for one year, scalding shower water temperature in jail, name calling and accusations of guilt by guards during incarceration without any conviction in jail, invasion of privacy, slander and libel from both city and county

**5) County Employees –** County of Santa Clara, Santa Clara County Dept. of Corrections and its employees

**Names or County Dept involved in alleged incident:** County of Santa Clara, Santa Clara County Dept. of Corrections

**6) Description of Loss:** (see answer 3), loss of sense of well being, safety, security in my own home, reputation from slander and libel, delay of award of business licenses causing lost income of $10 million per month

**7) Other Injured Persons:** (see answer 1)

**8) Amount Claimed Loss:** $1 Billion with damages
- Amount to date: see above
- Estimated amount of future costs: TBD
- Total Amount Claimed: at least $1 Billion USD

**Basis for computation of claims:**
    (1) Loss of business income due to delay of critical business government filing when plaintiff was jailed: due to false allegations which lead to an unfounded and illegal arrest
    (2) Personal assault injury/battery and emotional distress: due to excessive force and invasion of peaceful home environment
    (3) Libel, slander, abuse of process, gross negligence, poor jail accommodations, malicious prosecution, and jail time

4

**9) Witnesses, Hospitals, Doctors, etc...** Police, physicians for knee injury and treatment, household members, corporate employees.

**10) Additional Information. None.**

William B. Stewart, III _W.B. Stewart, III_

Rosalie A. Guancione _Rosalie A. Guancione_

Rosalie A. Guancione _Rosalie A. Guancione_
R.A. Guancione for Stewart University of America
_R.A. Guancione_

R.A. Guancione for Larkspur
_R. A. Guancione_

R.A. Guancione for Royal House of Stewart
Corporation, Inc.
_R. A. Guancione_

# Exhibit C

NOTE:    Please refer to cover page          **FOR CITY CLERK'S USE ONLY**
accompanying this form for
important information regarding
filing a claim for damages.

### CLAIM FOR DAMAGES AGAINST
### CITY OF SAN MATEO, A MUNICIPAL CORPORATION

1. **Claimant's Name/Full Address/Phone Number:**

   _SEE ATTACHed details_ _____  Daytime Phone # _(408) 436-8595_
   Name

   _SEE ATTACHed_ _____, _____, _____ _____
   (Box or Street Address)                    City           State    ZIP

2. **Representative:**  (complete only if attorney, insurance company,
                           parent, guardian, etc., represents claimant)

   _____  Phone # (____)_____
   Name

   _____
   Company or Firm Name

   _____, _____, _____ _____
   Street Address                    City           State    ZIP

   _____, _____, _____ _____
   Mailing Address (if different from street address)

3. **Date of Loss, Injury:** _03/10/08_ _____ _____
                              Month    Day   Year

   **Approximate Time of Day:** _7:00_____ (A.M.)/P.M. (circle one)

4. **Location of Incident:** (address at which damage/injury/loss occurred, or
   description, stating as **fully as possible**, the location of incident;
   attach diagram if you believe it would be helpful)

   _1461 Forrestal Ave, SAN Jose, CA 95110_ _____

   _____, in the City of _____

5. **Cause of Damage/Injury/Loss:** (describe cause of damage, such as
   'defective sidewalk', etc. -- attach extra page if necessary)

   _SEE ATTACHed detail_ _____

   _____

   _____

-1-

cityatty\claims\claimfrm

6. **Type of Damage/Injury/Loss:** (describe type of damage, such as 'broken leg', 'damaged carpet', etc. -- attach extra page if necessary)

*SEE ATTACHED Detail*

7. **Names of Employees of the City of San Mateo Believed to Have Caused the Injury/Damage/Loss:**

*SEE ATTACHED Details*

8. **Total Amount Claimed:** $ *SEE ATTACHED*

(This is the total known as of the date of presentation of this claim, including estimated amount of any injury/damage/loss.)

**Breakdown of Total Amount Claimed:**
(Include copies of invoices, estimates, etc.)

| Creditor | Creditor's Address | Amount Paid or Due |
|---|---|---|
| | *SEE Attached* | $ |
| | | $ |
| | | $ |

9. **Names, Addresses and Telephone Numbers of Witnesses to the Incident:**

| Name | Address | Phone No. |
|---|---|---|
| *SEE Attached* | | |

10. **Dated:** 04/24/08

I declare under penalty of perjury, under the laws of the State of California, that I have read the foregoing and that the same is true.

*R.A. Guancione - Claimant*

Signature
(Claimant or Authorized Representative)

_____
(Title of Representative)

-2-

cityatty\claims\claimfrm

TOTAL P.004

# ___ Claim Against the City of San Mateo, CA ____

(Attached to original claim document)

**1) Name of Claimant:**
    a. William B Stewart, III
    b. Rosalie A Guancione
    c. Stewart University of America
    d. Larkspur
    e. Royal House of Stewart

**Date of Birth:**
    a. William B Stewart, III - 11/11/1955
    b. Rosalie A Guancione – 01/16/1953

**Address of Claimant:**
    a. Stewart and Guancione: 1461 Forrestal Ave
        San Jose, CA 95110
    b. Stewart University of America:
      ➤ 2094 El Camino Real #218
      Santa Clara, CA 95050
    c. Larkspur and Royal House of Stewart
      ➤ 15732 Los Gatos Blvd #410
      Los Gatos, CA 95032

**Phone #:** 408-436-8595
**Correspondence Address:** 2094 El Camino Real #218
      Santa Clara, CA 95050

**2) Date of Incident:** March 10, approximately one year antecedent to that, and one month postcedent to that date
Place of Incident: in and around: 1461 Forrestal Ave.,
      San Jose, CA 95110

**3) Circumstances:** I, Rosalie Aubree` Guancione, a disabled 55 year old woman, barely able to walk due to knee surgery within the last week of the incident of 03/10/08, and still half asleep and droggy from taking pain medication for the surgery went to answer the front door. I saw 6 men outside, and another man coming from the backyard of the residence. Two men were holding the porch screen door open as if they were ready to pounce in my home upon opening of the front door, and all of them were huddling under the porch, an area of about 5' x 8'. I could not see exactly who they were. But they saw me when I looked out the window and demanded that I open the door immediately.

I opened the porch window and told them I didn't call the police, and I did not need the police. They said that they were there to arrest Bill Stewart, and they knew he was here and I had better open the door, or they would break it down.

I asked if they had a warrant or similar to show me. They then all groaned, rolled their eyes and shook their heads. I also asked why they were there to arrest Bill. They answered that he had felony charges against him and they just wanted to talk to him. Again I asked them if they had a warrant. They pressed against the screen of the window a plain white 8 ½" x 11" piece of regular white paper, with some printed information on it in font type size of approximately 10-11point, which took up only one fifth of the page approximately 3" x 6" at the left hand top area. This plain white paper had no judge's signature on it, it did not say warrant clearly on it so it could be read easily, and so I did not believe them. In fact, I could not read the paper thru the screen at all.

Then surprisingly, detective Miller of the San Mateo Police Department himself popped his head directly in front of me at the window behind the screen and said, *"Remember when I was here last time, I told you that I would be back and make things a lot worse! Remember? Well here I am"* I think he felt he was speaking with another person in the household--Because, I never spoke to detective Miller in person at any location.

So I told them I would open the door and wanted to see the warrant, and they agreed to show me it.  When I opened the door, one of the men put his foot in the door and then began pushing on it without

2

showing me warrant or any paper or information as he had agreed to do. So I pushed back. Then more men outside the door pushed harder and pushed the door open and they came running in. Two San Jose policemen brutally and roughly grabbed me, and man handled me by twisting my hands viciously and with brute force behind my back and forcefully pushing me down to the floor. I told them that they were hurting me on my hands where I just had IV needles in my arms and hands from the week prior from knee surgery, and I needed to sit down because I just had knee surgery, and I could not stand up and or twist around as they were unnecessarily physically pushing and forcing me down to my knees. They didn't care. They just kept demandingly saying, *"Come 'ere you – Get down!"* They pushed me very brutally and roughly to my knees on my hardwood floor in my dining room, approximately 4 feet away from the front door where they had originally entered. There was a chair less than 2 feet away but they would not let me sit on it or help me from my knees to get to the chair. They just kept pushing me to the floor and pulling and twisting my hands and arms behind my back. They hand cuffed me extremely roughly and kept twisting my wrists and still would not let me sit down. Finally I got off the floor, on my own as best as I could with my swollen knee, and made my way to the chair approximately 3 feet away now, took off the hand cuffs and handed them back to them.

At this time, I took off the hand cuffs and handed them back to the policemen and they were very angry with me. And, asked me how I got the cuffs off. I told them that they did not need to cuff me in the first place. I just needed to sit down when they kept brutally and roughly pushing me around. I also told them again

about the surgery on my knee only one week ago and I needed to sit in the chair not be on my knees on the floor where they had pushed me down. One policeman said, *"Boy she's a piece of work!"* to Bill Stewart, but I over heard him say it.

Bill Stewart saw how the police had man handled me because he was brought out of the back room of the residence, still in his underwear and hand cuffed him less than 20 feet away from where I was.

The San Mateo police told Bill Stewart they had a warrant for his arrest and were arresting him for Grand Theft. He was not read his rights at all then upon the arrest. They then let him get dressed and they took him out of the residence and brought him to the San Jose jail.

**4) City's Action which caused the incident:** Negligence, False Arrest, False Imprisonment, False testimony, violation of civil rights, illegal search and seizure, denial of reasonable bail, torment, inedible and inadequate diet, harassment, stalking for one year, scalding shower water temperature in jail, name calling and accusations of guilt by guards during incarceration without any conviction in jail, invasion of privacy, slander and libel from both city and county

**5) City Employees –**    City of San Mateo, San Mateo Judge Gerald Buchwald who initially signed the arrest warrant, Redwood City Judge, 1st hearing judge, San Mateo City Police Department, Susan Manheimer, City of San Mateo Police Chief, Scott Miller, City of San Mateo Police Detective, Mr Scott Miller, San Mateo City Council Members, Mr Brant Grotte, Mr Jon Lee, Ms Jan Epstein, Mr Jack Matthews, Ms Carol Groom

**Names or County Dept involved in alleged incident:** City of San Mateo, San Mateo Police Department, Can Mateo City Council, San Mateo Police Chief, San Mateo County Dept. of Corrections and San Mateo Superior Court Judges

**6) Description of Loss:** (see answer 3), loss of sense of well being, safety, security in my own home, reputation from slander and libel, delay of award of business licenses causing lost income of $10 million per month

**7) Other Injured Persons:**  (see answer 1)

**8) Amount Claimed Loss:** $1Billion with damages
      - Amount to date: see above
      - Estimated amount of future costs: TBD
      - Total Amount Claimed: at least $1Billion USD

**Basis for computation of claims:**
      (1) Loss of business income due to delay of critical business government filing when plaintiff was jailed: due to false allegations which lead to an unfounded and illegal arrest

4

(2) Personal assault injury/battery and emotional distress: due to excessive force and invasion of peaceful home environment

(3) Libel, slander, abuse of process, gross negligence, malicious prosecution, and jail time

**9) Witnesses, Hospitals, Doctors, etc...** Police, physicians for knee injury and treatment, household members, corporate employees.

**10) Additional Information. None.**

William B. Stewart, III

Rosalie A. Guancione

Rosalie A. Guancione

R.A. Guancione for Stewart University of America

R.A. Guancione for Larkspur

R.A. Guancione for Royal House of Stewart Corporation, Inc.

# Exhibit D

# ___ Claim Against the County of San Mateo, CA ____

(Attached to original claim document)

**1) Name of Claimant:**
    a. William B Stewart, III
    b. Rosalie A Guancione
    c. Stewart University of America
    d. Larkspur
    e. Royal House of Stewart

**Date of Birth:**
    a. William B Stewart, III  - 11/11/1955
    b. Rosalie A Guancione – 01/16/1953

**Address of Claimant:**
    a. Stewart and Guancione: 1461 Forrestal Ave
                       San Jose, CA 95110
    b. Stewart University of America:
       ➢  2094 El Camino Real #218
          Santa Clara, CA 95050
    c. Larkspur and Royal House of Stewart
       ➢  15732 Los Gatos Blvd #410
          Los Gatos, CA 95032

**Phone #:**  408-436-8595
**Correspondence Address:**  2094 El Camino Real #218
                          Santa Clara, CA 95050

**2) Date of Incident:** March 10, approximately one year antecedent to that, and one month postcedent to that date
Place of Incident: in and around: 1461 Forrestal Ave.,
                          San Jose, CA 95110

1

**3) Circumstances:** I, Rosalie Aubree` Guancione, a disabled 55 year old woman, barely able to walk due to knee surgery within the last week of the incident of 03/10/08, and still half asleep and droggy from taking pain medication for the surgery went to answer the front door. I saw 6 men outside, and another man coming from the backyard of the residence. Two men were holding the porch screen door open as if they were ready to pounce in my home upon opening of the front door, and all of them were huddling under the porch, an area of about 5' x 8'. I could not see exactly who they were. But they saw me when I looked out the window and demanded that I open the door immediately.

I opened the porch window and told them I didn't call the police, and I did not need the police. They said that they were there to arrest Bill Stewart, and they knew he was here and I had better open the door, or they would break it down.

I asked if they had a warrant or similar to show me. They then all groaned, rolled their eyes and shook their heads. I also asked why they were there to arrest Bill. They answered that he had felony charges against him and they just wanted to talk to him. Again I asked them if they had a warrant. They pressed against the screen of the window a plain white 8 ½" x 11" piece of regular white paper, with some printed information on it in font type size of approximately 10-11point, which took up only one fifth of the page approximately 3" x 6" at the left hand top area. This plain white paper had no judge's signature on it, it did not say warrant clearly on it so it could be read easily, and so I did not believe them. In fact, I could not read the paper thru the screen at all.

Then surprisingly, detective Miller of the San Mateo Police Department himself popped his head directly in front of me at the window behind the screen and said, *"Remember when I was here last time, I told you that I would be back and make things a lot worse! Remember? Well here I am"* I think he felt he was speaking with another person in the household--Because, I never spoke to detective Miller in person at any location.

So I told them I would open the door and wanted to see the warrant, and they agreed to show me it.  When I opened the door, one of the men put his foot in the door and then began pushing on it without

2

showing me warrant or any paper or information as he had agreed to do. So I pushed back. Then more men outside the door pushed harder and pushed the door open and they came running in. Two San Jose policemen brutally and roughly grabbed me, and man handled me by twisting my hands viciously and with brute force behind my back and forcefully pushing me down to the floor. I told them that they were hurting me on my hands where I just had IV needles in my arms and hands from the week prior from knee surgery, and I needed to sit down because I just had knee surgery, and I could not stand up and or twist around as they were unnecessarily physically pushing and forcing me down to my knees. They didn't care. They just kept demandingly saying, *"Come 'ere you – Get down!"* They pushed me very brutally and roughly to my knees on my hardwood floor in my dining room, approximately 4 feet away from the front door where they had originally entered. There was a chair less than 2 feet away but they would not let me sit on it or help me from my knees to get to the chair. They just kept pushing me to the floor and pulling and twisting my hands and arms behind my back. They hand cuffed me extremely roughly and kept twisting my wrists and still would not let me sit down. Finally I got off the floor, on my own as best as I could with my swollen knee, and made my way to the chair approximately 3 feet away now, took off the hand cuffs and handed them back to them.

At this time, I took off the hand cuffs and handed them back to the policemen and they were very angry with me. And, asked me how I got the cuffs off. I told them that they did not need to cuff me in the first place. I just needed to sit down when they kept brutally and roughly pushing me around. I also told them again

about the surgery on my knee only one week ago and I needed to sit in the chair not be on my knees on the floor where they had pushed me down. One policeman said, *"Boy she's a piece of work!"* to Bill Stewart, but I over heard him say it.

Bill Stewart saw how the police had man handled me because he was brought out of the back room of the residence, still in his underwear and hand cuffed him less than 20 feet away from where I was.

The San Mateo police told Bill Stewart they had a warrant for his arrest and were arresting him for Grand Theft. He was not read his rights at all then upon the arrest. They then let him get dressed and they took him out of the residence and brought him to the San Jose jail and then to San Mateo jail in Redwood City, for 12/days.

3

**4) City's Action which caused the incident:** Negligence, False Arrest, False Imprisonment, False testimony, violation of civil rights, illegal search and seizure, denial of reasonable bail, torment, inedible and inadequate diet, harassment, stalking for one year, scalding shower water temperature in jail, name calling and accusations of guilt by guards during incarceration without any conviction in jail, invasion of privacy, slander and libel from both city and county

**5) County Employees –**   County of San Mateo, San Mateo County Dept. of Corrections and its employees

**Names or County Dept involved in alleged incident:** County of San Mateo, San Mateo County Dept. of Corrections

**6) Description of Loss:** (see answer 3), loss of sense of well being, safety, security in my own home, reputation from slander and libel, delay of award of business licenses causing lost income of $10 million per month

**7) Other Injured Persons:**  (see answer 1)

**8) Amount Claimed Loss:** $1Billion with damages
- Amount to date: see above
- Estimated amount of future costs: TBD
- Total Amount Claimed: at least $1Billion USD

**Basis for computation of claims:**
- (1) Loss of business income due to delay of critical business government filing when plaintiff was jailed: due to false allegations which lead to an unfounded and illegal arrest
- (2) Personal assault injury/battery and emotional distress: due to excessive force and invasion of peaceful home environment
- (3) Libel, slander, abuse of process, gross negligence, poor jail accommodations, malicious prosecution, and 12/days jail time in Redwood City

4

**9) Witnesses, Hospitals, Doctors, etc...**  Police, physicians for knee injury and treatment, household members, corporate employees.

**10) Additional Information.  None.**

William B. Stewart, III

Rosalie A. Guancione

Rosalie A. Guancione

R.A. Guancione for Stewart University of America

R.A. Guancione for Larkspur

R.A. Guancione for Royal House of Stewart Corporation, Inc.

# Exhibit E

July 31, 2007

When I, William B Stewart, III, realized that I could not pay the San
Francisco Police Credit Union, I sent a letter of explanation to the persons
below. (See attached letter)

Copy of explanation letter was sent to:

- Chief of Police – Susan Manheimer

- Members of the San Mateo City Council:
   Brandt Grotte – Council Member San Mateo
   Jon Lee – Council Member
   Jan Epstein – Council Member

- Internal Affairs – Complaints Dept – San Mateo Police Dept

- Mayors Office:
   Jack Matthews, Mayor
   Carol Groom, Deputy Mayor

Chief of Police
City of San Mateo
2000 S. Delaware St.
San Mateo, CA 94403

July 31, 2007

Dear Chief,

A well known principle in U.S. law is that there never will be a debtors prison. The abuses of the debtors prison were documented, and the Founding Fathers and authors of the U.S. Constitution ensured that such an entity would never be allowed in the U.S.. Failure to make payments on installment signature loans (consumer debt) is not and never will be a crime in the U.S..

I recently took out a signature loan through the San Mateo branch of the San Francisco Police Credit Union. A signature loan is a loan made on a promise to pay, which involves no collateral backing. Since that time, my employment compensation has changed to a deferred basis, for me and all other employees of Larkspur until further capitalization of the company I am contracted to work for can be obtained. This has resulted in delayed payments on my signature loan to the SF Police Credit Union. When I get paid by Larkspur, then I will pay the payments on my signature loan to the SF Police Credit Union. The Mercury News reported last week that home sales are now at the lowest level since 1995, indicating an entire economic slow down.

Detective Scott Miller, #131, in your department, has apparently begun spending inordinate periods of time trying to convert a failure to pay installment signature loan payments (consumer debt) into a criminal act. Again, it is not a crime to not pay an installment unsecured loan debt. Detective Miller has no basis for investigation, nor does he have any criminal case. He further has no reason to bully, harass or waste my time.

Detective Miller has now decided to become creative and try to create some criminal case when there is none, by falsely claiming that I never worked for my reported employer of record, Larkspur. The Larkspur company exists, has a business license, and it's President is Aubree Guancione, tel. (408)702-7676. Ms. Guancione provided a letter to the SF Police Credit Union at the time of the loan application, verifying my employment at Larkspur. If the SF Police Credit Union has deliberately mislead Detective Miller to get him to harass me into making payments on a signature loan, then they have borne false witness. I told this to Det. Miller previously, but he continues to harass me, and invent an impossible conversion of a civil consumer debt issue into something criminal.

**This is a formal written complaint against Detective Miller, and a request that he now be fired for incompetence, or sanctioned and sent back for retraining, for his continued fantasy criminal investigation at tax payer's expense of a consumer debt issue that is completely civil in nature.** The tax payer's and our nation would be better served if the San Mateo PD were to work on the problems of illegal drug distribution and illegal alien problems in this state rather than waste time on consumer debt issues.

William B. Stewart, III, former Captain, U.S. Army
1600 Saratoga Ave., Ste. 403 PMB 223, San Jose, CA 95129

Attachment: Letter, dated 7/23/07, from Det. Miller, on San Mateo City letterhead

Copy forwarded: Complaints Div. San Mateo PD, each member of San Mateo Mayor and City Counsel, Larkspur

toga Ave. STE 403-223
, CA 95129

Lucy Carlson, Records Custodian
San Mateo Police Dept.
2000 S. Delaware St.
San Mateo, CA 94403

toga Ave, STE 403-223
CA 95129

Jack Matthews, Mayor
City of San Mateo
330 West 20th Ave.
San Mateo, CA 94403



Internal Affairs — Complaints Dept

San Mateo Police Dept.
2000 S. Delaware St.
San Mateo, CA 94403

art III



Police Chief Susan Manheimer
San Mateo Police Dept.
2000 S. Delaware St.
San Mateo, CA 94403

Brandt Grotte, Council Memb
330 West 20th Ave.
San Mateo, CA 94403

John Lee. Council Member
330 West 20th Ave.
San Mateo, CA 94403

Carol Groom, Deputy Mayor
City of San Mateo
330 West 20th Ave.
San Mateo, CA 94403

Jan Epstein, Counsil Member
City of San Mateo
330 West 20th Ave.
San Mateo, CA 94403

Jack Matthews, Mayor
City of San Mateo
330 West 20th Ave.
San Mateo, CA 94403

# PROOF OF MAIL SERVICE

On the date below, I filed the document called:

*FEDERAL FILING OF:*

Stewart /vs/ San Mateo Police Credit Union

In person to:

San Jose Federal Court
280 South Second Street
San Jose, CA

...................................................

I declare under the penalty of perjury under the laws of the United States of America
that the foregoing is true and correct.

Executed at San Jose, California

Date : April 24, 2008 A.D.

Signed x _K.D. _____

Printed Name _____ R. Guancione _____

✎ JS 44 (Rev. 12/07) (cand rev 1-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
william stewart III

## DEFENDANTS
San mateo police credit union

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)
santa clara co.

County of Residence of First Listed Defendant San mateo co.
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
ADR

Attorneys (If Known)

C08    02143    RS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X]1 | 1 | Incorporated or Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reapportionment |
| 120 Marine | 310 Airplane | 362 Personal Injury— Med. Malpractice | 620 Other Food & Drug | 423 Withdrawal 28 USC 157 | 410 Antitrust |
| 130 Miller Act | 315 Airplane Product Liability | 365 Personal Injury— Product Liability | 625 Drug Related Seizure of Property 21 USC 881 | | 430 Banks and Banking |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | 368 Asbestos Personal Injury Product Liability | 630 Liquor Laws | **PROPERTY RIGHTS** | 450 Commerce |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | | 640 R.R. & Truck | 820 Copyrights | 460 Deportation |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 650 Airline Regs. | 830 Patent | 470 Racketeer Influenced and Corrupt Organizations |
| 152 Recovery of Defaulted Student Loans (Excl. Veterans) | 345 Marine Product Liability | 370 Other Fraud | 660 Occupational Safety/Health | 840 Trademark | 480 Consumer Credit |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 371 Truth in Lending | 690 Other | | 490 Cable/Sat TV |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | 810 Selective Service |
| 190 Other Contract | 360 Other Personal Injury | 385 Property Damage Product Liability | 710 Fair Labor Standards Act | 861 HIA (1395ff) | 850 Securities/Commodities/ Exchange |
| 195 Contract Product Liability | | | 720 Labor/Mgmt. Relations | 862 Black Lung (923) | 875 Customer Challenge 12 USC 3410 |
| 196 Franchise | | | 730 Labor/Mgmt.Reporting & Disclosure Act | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 740 Railway Labor Act | 864 SSID Title XVI | 891 Agricultural Acts |
| 210 Land Condemnation | 441 Voting | 510 Motions to Vacate Sentence | 790 Other Labor Litigation | 865 RSI (405(g)) | 892 Economic Stabilization Act |
| 220 Foreclosure | 442 Employment | Habeas Corpus: | 791 Empl. Ret. Inc. Security Act | | 893 Environmental Matters |
| 230 Rent Lease & Ejectment | 443 Housing/ Accommodations | 530 General | | **FEDERAL TAX SUITS** | 894 Energy Allocation Act |
| 240 Torts to Land | 444 Welfare | 535 Death Penalty | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 245 Tort Product Liability | 445 Amer. w/Disabilities— Employment | 540 Mandamus & Other | **IMMIGRATION** | 871 IRS—Third Party 26 USC 7609 | 900Appeal of Fee Determination Under Equal Access to Justice |
| 290 All Other Real Property | 446 Amer. w/Disabilities— Other | 550 Civil Rights | 462 Naturalization Application | | |
| | [X] 440 Other Civil Rights | 555 Prison Condition | 463 Habeas Corpus— Alien Detainee | | 950 Constitutionality of State Statutes |
| | | | 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 USC § 1983 - 18 USC vcc 3-603 604 15 USC 1682 g
Brief description of cause:
lawsuit for damages & personal injury 1682(e)c

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ B Billion

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE."

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)
- [ ] SAN FRANCISCO/OAKLAND
- [X] SAN JOSE

DATE 4/24/08

SIGNATURE OF ATTORNEY OF RECORD K. A. Guancioe in proper persona